# EXHIBIT A

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Provider Reimbursement Review Board
7500 Security Boulevard
Mail Stop: B1-01-31
Baltimore, MD 21244
410-786-2671

**Via Electronic Delivery**

James Ravindran, President
Quality Reimbursement Services, Inc.
150 N. Santa Anita Avenue, Suite 570A
Arcadia, CA 91006

RE: ***Dismissal of Medicare Fraction (SSI) – Statutory & Systemic Errors CIRP Groups***
25-2177GC *et al.* (*See* Attached Listing of 52 Cases)

Dear Mr. Ravindran:

The Provider Reimbursement Review Board (the "Board") has reviewed the appeal requests in the 52 above-referenced cases. Set forth below is the decision of the Board to dismiss the above-captioned common issue related party ("CIRP") group appeals. The pertinent facts and the Board's determination are set forth below.

## Introduction

Quality Reimbursement Services, Inc. ("QRS") filed the above-referenced 52 CIRP group appeals in the Office of Hearings Case & Document Management System ("OH CDMS"). The issue statements in these groups are materially identical. The Providers contend that the that the Medicare/SSI Fractions published on CMS' website on August 13, 2024, pursuant to CMS transmittal 12785, were determined incorrectly due to the "inclusion of Medicare Part C days in the denominator of the Fraction, and . . . exclusion of days from the numerator of the Medicare Fraction associated with individuals who were entitled to Supplemental Security Income (SSI) during their hospital stay but who were not in SSI pay status during such stays, or were in SSI pay status during their hospital stay but were not assigned payment status code C01, M01 or M02."[1]

## Background

### A. Medicare DSH Payment and Realignment

Part A of the Medicare statute covers inpatient hospital services. Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the inpatient prospective payment system ("IPPS").[2] Under IPPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments.[3]

---

[1] *See e.g.*, Case No 25-2177GC, Providers' Issue Statement at 1 (Feb. 7, 2025)
[2] *See* 42 U.S.C. § 1395ww(d)(l)-(5); 42 C.F.R. Part 412.
[3] *Id.*

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al*.
Page 2

The IPPS statute contains several provisions that adjust reimbursement based on hospital-specific factors.[4]  This case involves the hospital-specific disproportionate share hospital ("DSH") adjustment, which requires the Secretary to provide increased IPPS payments to hospitals that "serve [] a significantly disproportionate number of low-income patients."[5]

A hospital may qualify for a DSH adjustment based on its disproportionate patient percentage ("DPP").[6]  As a proxy for utilization by low-income patients, the DPP determines a hospital's qualification as a DSH, and the amount of the DSH payment to be paid to a qualifying hospital.[7]  The DPP is defined as the sum of two fractions expressed as percentages.[8]  Those two fractions are referred to as the "Medicare/SSI fraction" and the "Medicaid fraction."

This matter concerns the Medicare/SSI fraction.[9]  The statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I), defines the Medicare/SSI fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplemental security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter . . . .

The Medicare/SSI fraction is computed annually by the Centers for Medicare & Medicaid Services ("CMS"), and the Medicare contractors use CMS' calculation to compute a hospital's eligibility for and if eligible, the amount of any DSH payment adjustment.[10]  CMS calculates the Medicare/SSI Fractions used to calculate Medicare DSH payments based on discharges in the respective federal fiscal year, but hospitals are permitted under 42 C.F.R. § 412.106(b)(3) to request that CMS recalculate, or "realign," their Medicare/SSI Fractions based on discharges in the hospital's cost reporting period.

---

[4] *See* 42 U.S.C. § 1395ww(d)(5).
[5] *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I); 42 C.F.R. § 412.106.
[6] *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.l06(c)(l).
[7] *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d).
[8] *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi).
[9] The other component of the DPP, not at issue in this matter, is the "Medicaid Fraction" which is the number of hospital patient days for patients eligible for medical assistance under a State Medicaid plan (*i.e.* a plan approved by the Secretary under 42 U.S.C. § 1396 *et* seq.) but who were not entitled to Medicare Part A, divided by the total number of hospital patient days.  42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).  *See also* 42 C.F.R. § 412.106(b)(4).
[10] 42 C.F.R. § 412.106(b)(2)-(3).

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al*.
Page 3

### B.   *Appeal of Publication of Medicare/SSI Fraction Data Pursuant to CMS Transmittal 12785*

The Providers in these groups state that they are appealing from the publication of Medicare/SSI Fractions on CMS' website on August 13, 2024, which was done pursuant to CMS Transmittal 12785, "Instructions for Processing Requests for SSI Realignment for Cost Reporting Periods Starting Before October 1, 2013."  Transmittal 12785 replaced and updated Transmittal 12747 that was originally issued on July 26, 2024.  The original Transmittal 12747 announced that CMS was resuming the processing of realignment requests for cost reporting periods starting before October 1, 2013.  With realignment, hospitals are permitted under 42 C.F.R. § 412.106(b)(3) to request that CMS recalculate, or "realign," their Medicare/SSI Fractions based on discharges in the hospital's cost reporting period, rather than CMS' calculated Medicare/SSI Fractions based on discharges in the respective federal fiscal year.

The original Transmittal 12747, which Transmittal 12785 updates, describes how CMS temporarily halted the processing of realignment requests for cost reporting periods starting before October 1, 2013, due "to a lack of policy established through notice-and-comment rulemaking regarding the treatment of Part C days for that period of time."[11]  However, on June 9, 2023, CMS issued Final Rule CMS-1739-F, finalizing the treatment of Medicare Part C days in determining a hospital's DPP, whereby such days are to be included in the Medicare/SSI Fraction and excluded from the numerator of the Medicaid fraction.  Both transmittals announce that with the issuance of final rule CMS-1739-F, and the publication of provider Medicare/SSI Fractions on the CMS website, the agency was resuming the processing of realignment requests for such cost reporting periods.

The original Transmittal 12747 states that the Medicare/SSI Fractions available on the CMS website for cost reporting periods starting before October 1, 2013, like the federal fiscal year Medicare/SSI Fractions for the same period, were determined pursuant to final rule CMS-1739-F.  The transmittal directs MACs to use such fractions to determine DSH payments for realignment requests in appropriate cases.  The Transmittal explains that for realignment requests for such cost reporting periods, "CMS will calculate cost reporting period SSI ratios for all periods, for all hospitals, and post those ratios to the CMS DSH website . . . ."[12]  Both Transmittal 12785 and the earlier Transmittal 12747 which it updates are nearly identical and focused on the realignment process.  The *only* change in Transmittal 12785 from the earlier Transmittal 12747 is addressing a formatting change "to update the DSH Adjustment and Realignment files years 1988-2013, so that the SSI Ratio column is consistently rounded to four (4) decimals in all files.  All other information remains the same."[13]

## Medicare Contractor Jurisdictional Challenge

 The Medicare Contractor asserts that the Board does not have jurisdiction over the issue in these group appeals because "the appeal does not arise from a 'final determination' as that term is used

---

[11] CMS Transmittal 12747 at 3 (July 26, 2024).
[12] *Id.*
[13] CMS Transmittal 12785 at 1 (Aug. 13, 2024).

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al*.
Page 4

in 42 U.S.C. § 1395oo(a)(1)(A)(ii) and 42 C.F.R. § 1835(a) (as also cross-referenced in 42 C.F.R. § 405.1837(a)(1)).”[14]  The Medicare Contractor explains that the Providers appealed from Transmittal 12747 and/or Transmittal 12785, and argues that these documents are not appealable final determinations.[15]

The Medicare Contractor also argues that the court decisions the Provider referenced in their appeals are inapplicable to the instant appeals.  The Medicare Contractor explains that the Providers recognized the Board's previous dismissal of appeals from the publication of SSI percentages when they stated, in the original group issue statement:

> The Provider [Group] is aware that the PRRB has taken the position that the publication of SSI Ratio is not a final determination and that providers must await a Notice of Program Reimbursement (NPR) setting its total reimbursement before challenging its Medicare Fraction, but the Provider [Group] respectfully submits that the PRRB is incorrect, as decided in two recent court decisions.  *See Battle Creek Health Sys. v. Becerra*, Civil Action 17-0545 (CKK) (D.D.C. Oct. 31, 2023); *Baylor All Saints Med Ctr. v. Becerra,* Civil Action 4:24-cv-00432-P (N.D. TX Aug. 15, 2024).[16]

The Providers reiterated this statement, almost verbatim, in their response to the Medicare Contractor's Jurisdictional Challenge.

The Medicare Contractor points to a prior Board decision in which it distinguished the decision in *Battle Creek* from the facts of the appeal before the Board, and argues that the Board should make a similar finding here with respect to the applicability of *Battle Creek* to these transmittal appeals.[17]  With respect to *Baylor All Saints*, the Medicare Contractor argues that "[b]ecause the Court failed to address the statutory requirements for Board jurisdiction, the Providers' reliance on [the case] is without merit."[18]

Last, the Medicare Contractor argues that even if the Transmittals constituted an appealable final determination, the appeals were not timely filed.  The final determination support included for each Provider in these groups is a copy of either the July 26, 2024 CMS Transmittal 12747 or the August 13, 2024 Transmittal 12785, both of which implement the Medicare Part C final rule which was issued on June 9, 2023.[19]

---

[14] Jurisdictional Challenge at 2.
[15] *Id.*
[16] *Id.* at 5.
[17] *Id.*  at 6.
[18] *Id.*
[19] *Id.*

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al.*
Page 5

## Providers' Jurisdictional Response

The Providers argue that the Board has jurisdiction over the appeals under the statute.  According to the Provider:

> Congress added romanette (ii) to section 1878(a)(1)(A) of the [Social Security] Act, to confer jurisdiction on the Board where a provider is "dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1886."
>
> The fundamental flaw in the PRRB's conclusion that providers must wait to receive an NPR is that romanette (i) of section 1878(a)(1)(A) of the Act already requires an NPR for an intermediary determination.  The PRRB's approach renders romanette (II) superfluous. . .[20]

With respect to the Medicare Contractor's argument that the appeals were timely filed, the Providers argue that the CMS Transmittals in question in these appeals fall under the category of final determination in PRRB Rule 4.3.1, *not* PRRB Rule 4.3.2, as the Board found.  In appeals from the same final determinations, the Board found that the Transmittal appeals were more analogous to a Federal Register notice, and therefore the date of receipt is the publication date, without a five (5) day mailing presumption.  The Providers disagree and argue:

> [T]he CMS Transmittals in question fall under the category listed in Board Rule 4.3.1, because the Rule does not specify that the '[o]ther determinations issued by CMS or its contractors with regard to the amount of total reimbursement due the provider…' must be specific to 'each respective provider' for a CMS determination to be considered an appealable '[f]inal determination.'"[21]

## Board Determination:

In these cases, the Providers maintain that CMS' publication of Medicare Fraction data on its website, pursuant to Transmittal 12785, on August 13, 2024, "constitutes 'a final determination of the Secretary as to the amount of the payment under subsection . . . (d) of section 1886' of the Social Security Act (the Act)" and because the Provider Group "is dissatisfied with this determination . . . the PRRB has jurisdiction over" this appeal.[22]  However, the publication of Medicare/SSI Fractions in conjunction with Transmittal 12785, which merely requires a formatting change to the Medicare/SSI Fraction data posted on CMS' website so that the "SSI Ratio column is consistently rounded to four (4) decimals in all files" is not a "final

---

[20] Jurisdictional Response at unnumbered page 2.
[21] *Id.* at unnumbered pages 2-3.
[22] *See e.g.* Case No 25-2177GC, Providers' Issue Statement at 1.

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al.*
Page 6

determination" from which a provider may appeal.  As explained below, the Board dismisses this matter for lack of jurisdiction over the Providers' appeals in these 52 groups.

The Medicare statute authorizes providers to seek hearings before the PRRB in two sets of circumstances:  First, where the provider is dissatisfied with "the amount of total program reimbursement" as set forth in a Notice of Program Reimbursement (NPR);[23] and second, where the provider is dissatisfied with a "final determination . . . as to the amount of the payment" under the prospective payment system.[24]  In this case, the Providers in these groups have not yet received NPRs and have based their appeals, pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(ii), on their dissatisfaction with Medicare/SSI Fraction data that was published on the CMS website in conjunction with Transmittal 12785.

The Providers, in their Issue Statements, acknowledge that the Board "has taken the position that the publication of [Medicare/SSI Fraction data on CMS' website] is not a final determination."[25] But the Providers also note disagreement with the Board's position, citing *Battle Creek Health Sys. v. Becerra*,[26] and *Baylor All Saints Med. Ctr. v. Becerra*,[27] decisions where courts held that providers met the requirements for a Board appeal before receiving a final appealable determination as to the amount of DSH payment.[28]

For the Board, the court's decision in *Battle Creek* is inapposite because, unlike in the instant cases, the challenged Transmittal and publication of data in that case was described by the court as being a "*fait accompli*."[29]  The court in *Battle Creek* observed that the challenged Transmittal and publication of data there "provided, with some finality, 'advance knowledge of the amount of [the DSH] payment.'"[30]  Yet, in the instant cases, the publication of the challenged Transmittal and accompanying Medicare/SSI Fraction data, provided by CMS for the purpose of informing provider choice as to whether to request realignment of the Medicare/SSI Fraction, does not definitively inform whether a provider qualifies for the DSH adjustment, much less the amount of DSH reimbursement that a provider could receive.

In recent Board decisions, the Board has continued to notice its disagreement with *Battle Creek* and by extension, other court decisions like *Baylor All Saints*.[31]  The Board has maintained that *Memorial Hospital v. Becerra*[32] is a better-reasoned decision and provides a more thoughtful analysis.  In *Memorial Hospital*, a group of providers filed an appeal similar to the Providers' appeals in these 52 groups.  The *Memorial Hospital* providers challenged CMS' publication of Medicare/SSI Fraction data, arguing that there are certain instances where a provider can file a Board appeal prior to receiving an NPR.  The court in *Memorial Hospital* ultimately agreed with

---

[23] 42 U.S.C. § 1395oo(a)(1)(A)(i).
[24] 42 U.S.C. § 1395oo(a)(1)(A)(ii).
[25] *See e.g.* Case No 25-2177GC, Providers' Issue Statement at 1.
[26] 2023 WL 7156125 (D.D.C. Oct. 31, 2023), *appeal docketed*, No.  (D.C. Cir. Dec. 29, 2023).
[27] 2024 WL 3833278 (N.D. Tex. Aug. 15, 2024), *appeal docketed*, No. 34-10934 (5th Cir. Oct. 17, 2024).
[28] *See e.g.* Case No 25-2177GC, Providers' Issue Statement at 1.
[29] *Battle Creek*, 2023 WL 7156125 at *5.
[30] *Id*.
[31] *See, e.g.*, Board decisions in PRRB Case Nos. 24-0491, 24-1531GC, and 24-0413GC.
[32] 2022 WL 888190 (D.D.C. Mar. 25, 2022).

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al*.
Page 7

the Board that CMS' publication of Medicare/SSI Fractions was not an appealable final determination.

The court distilled the parties' positions as "boil[ing] down to a dispute about whether Plaintiffs have conflated a determination by the Secretary about one of several undetermined elements that eventually flows into the amount of payment and 'a final determination of the Secretary as to the amount of payment.'"[33]  The court held that CMS' publication of Medicare/SSI Fractions, even if the publication of such fractions had been issued as "final," could and would not be a final determination "as to the amount of payment" because the Medicare/SSI Fractions are "just one of the variables that determines whether hospitals receive a DSH payment and, if so, for how much."[34]  For the court, a challenge to an element of payment under 42 U.S.C. § 1395oo(a)(1)(A)(ii) is only appropriate if, as the D.C. Circuit has explained, "the Secretary ha[s] firmly established 'the only variable factor in the final determination as to the amount of payment under § 1395ww(d).'"[35]

Using the reasoning in *Memorial Hospital*, given the nature of the DSH adjustment, the publication of hospitals' Medicare/SSI Fractions on CMS' website is not final a determination as to the amount of payment due to any provider because the Medicare/SSI Fraction alone does not determine the amounts that hospitals will be paid under the adjustment.   Instead, the Medicare/SSI Fraction is incorporated, along with the Medicaid Fraction, into the DPP, which is ultimately the calculation that determines eligibility for and the amount of any DSH adjustment. The DPP must also exceed certain thresholds to qualify for any DSH adjustment.[36]  Thus, although CMS calculates and publishes the Medicare/SSI Fraction for every hospital that receives Medicare reimbursement, the determination of whether a hospital receives reimbursement is made only after the hospital submits its year-end cost report.

In this matter, the Providers contend that the Medicare/SSI Fractions published on CMS' website on August 13, 2024, pursuant to CMS transmittal 12785, were determined incorrectly due to the "inclusion of Medicare Part C days in the denominator of the Fraction" and . . .  "exclusion of days from the numerator of the Medicare Fraction associated with individuals who were entitled to Supplemental Security Income (SSI) during their hospital stay but who were not in SSI pay status during such stays, or were in SSI pay status during their hospital stay but were not assigned payment status code C01, M01 or M02."[37]  Transmittal 12785 bears no connection to

---

[33] *Id*. at *8.

[34] *Id*. at *9.

[35] *Id*. at *8 (quoting *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 811 (D.C. Cir. 2001) (quoting *Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139, 147 (D.C. Cir. 1986)) (emphasis added); *see also Samaritan Health Serv. v. Sullivan*, 1990 WL 33141 at *3 (9th Cir. 1990) (unpublished table decision) ("We have held that if the Secretary's classification of a hospital effectively fixes the hospital's reimbursement rate, then that decision is a 'final determination' as referred to 42 U.S.C. § 1395oo(a)(1)(A)(ii).").

[36] 42 C.F.R. § 412.106(d)(2)(i)-(ii).

[37] *See e.g.* Case No 25-2177GC, Providers' Issue Statement at 1.  Although the Providers characterize this as the "sole issue" under appeal, the issue statement appears to encompass two separate and distinct issues: 1) the inclusion of Medicare Part C days in the denominator of the Medicare/SSI Fraction; and 2) the exclusion of patient days for individuals eligible for both Medicare and SSI from the numerator of the Medicare/SSI Fraction.  This conflation of issues is contrary to 42 C.F.R. § 405.1837(a)(2) which restricts a group appeal to a "single question of fact or

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al*.
Page 8

the issue under appeal as the Transmittal merely implements a formatting change to the SSI Fraction data that was previously made available through the earlier Transmittal 12747 in order to ensure that the SSI Ratio column is consistently rounded to four decimals in all files.  This information is published so that providers have sufficient information available to inform whether they want to request realignment.  Providers cannot claim that with publication of Medicare/SSI Fraction data on CMS' website in a new decimal format pursuant to Transmittal 12785, they are somehow "dissatisfied with a final determination of Secretary as to the amount of payment."[38]

Neither the publication of the Medicare/SSI Fraction data, nor the decimal formatting change described in Transmittal 12785 informs whether a provider qualifies for the DSH adjustment, much less the amount of DSH reimbursement that a provider could receive.  The Providers here have included no proof that they have requested realignment, nor even that with realignment they would be eligible for DSH reimbursement (changes in either the Medicare/SSI or Medicaid fractions could potentially result in a DPP below that required to qualify for the DSH adjustment).  Moreover, appeal of Transmittal 12785, which only rounded the published Medicare/SSI Fraction data to four decimal places, concerns only one factor of the DPP and is almost certainly unlikely to result in a change in DSH reimbursement sufficient to meet the amount in controversy required for a group appeal ($50,000 or more).[39]  That CMS is providing such information to inform a provider's choice as to whether to request realignment of the Medicare/SSI Fraction that will be calculated for use in determining the DPP which ultimately determines whether a provider qualifies for DSH and how much they could receive, clearly indicates that the publication of SSI Fraction data is not a final determination as to the amount of payment.

Assuming *arguendo* that the Providers could persuade the Board that the Transmittals and accompanying SSI Fraction data are final appealable determinations, the Board must still dismiss the majority of the Providers' appeals because such appeal requests would be untimely. Pursuant to 42 U.S.C. § 1395oo(a)(3), a provider's request for a hearing must be filed within 180 days of the date of receipt of the final determination.[40] Given the nature of the Groups' challenge, it appears that they are actually challenging Final Ruling CMS-1739-F rather than the Transmittals and accompanying SSI Fraction data. The Transmittals merely implement the Ruling in providing the providers with SSI Fractions recalculated or "realigned" based on the hospitals' cost reporting period instead of the federal fiscal year. Final Ruling CMS-1739-F was issued June 9, 2023, and the Providers' appeals were all filed in early 2025, long past the expiration of the 180-day period to file an appeal.  Moreover, CMS Transmittal 12747 was originally issued on July 26, 2024, and a large majority of the Providers filed their appeals on February 6th or 7th, 2025, nearly two weeks or more after the 180-day period had expired, if calculated from that date. Even if such Providers were to argue that the appeals were timely based on the later issuance of Transmittal 12785 on August 13, 2024, this Transmittal bears no connection to the

---

interpretation of law, regulations, or CMS Rulings that is common to each provider in the group."  *See also* PRRB Rule 13.

[38] *See* 42 U.S.C. § 1395oo(a)(1)(A)(ii).

[39] *See* 42 U.S.C. § 1395oo(b); 42 C.F.R. § 405.1837(a)(3).

[40] *See also* 42 C.F.R. § 405.1835(a)(3)

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al*.
Page 9

issue under appeal as the Transmittal merely implements a formatting change to the SSI Fraction data that was previously made available through the earlier Transmittal 12747 so that the SSI Ratio column is consistently rounded to four decimals in all files.

**Conclusion**

As the Medicare/SSI Fraction data published pursuant to Transmittal 12785 is not an appropriately appealable final determination, the Providers have failed to meet the jurisdictional requirements for a hearing and the Board dismisses the 52 group appeals and removes them from the Board's docket.

Review of this determination may be available under the provision of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875 and 405.1877.

Board Members Participating:

Kevin D. Smith, CPA
Ratina Kelly, CPA
Nicole E. Musgrave, Esq.
Shakeba DuBose, Esq.

FOR THE BOARD:

8/19/2025

X   Kevin D. Smith, CPA

Kevin D. Smith, CPA
Board Chair
Signed by: Kevin D. Smith -A

Cc:    Wilson C. Leong, Esq., CPA, Federal Specialized Services
       Michael Redmond, Novitas Solutions, Inc. (J-H)

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al*.
Page 10

**Listing of 52 Cases**

| | |
|---|---|
| 25-2069GC | BS&W Health CY 1988 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2070GC | BS&W Health CY 1989 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2071GC | BS&W Health CY 1990 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2072GC | BS&W Health CY 1991 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2073GC | BS&W Health CY 1992 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2075GC | BS&W Health CY 1993 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2076GC | BS&W Health CY 1994 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2077GC | BS&W Health CY 1995 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2078GC | BS&W Health CY 1996 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2079GC | BS&W Health CY 1997 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2080GC | BS&W Health CY 1998 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2081GC | BS&W Health CY 1999 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2082GC | BS&W Health CY 2000 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2083GC | BS&W Health CY 2001 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2084GC | BS&W Health CY 2002 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2085GC | BS&W Health CY 2003 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2086GC | BS&W Health CY 2004 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2087GC | BS&W Health CY 2005 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2088GC | BS&W Health CY 2006 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2089GC | BS&W Health CY 2007 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2090GC | BS&W Health CY 2008 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2091GC | BS&W Health CY 2009 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2092GC | BS&W Health CY 2010 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2093GC | BS&W Health CY 2011 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2094GC | BS&W Health CY 2012 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2095GC | BS&W Health CY 2013 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2096GC | BS&W Health CY 2014 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2142GC | Houston Methodist CY 1988 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2143GC | Houston Methodist CY 1989 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2144GC | Houston Methodist CY 1990 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2145GC | Houston Methodist CY 1991 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2146GC | Houston Methodist CY 1992 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2147GC | Houston Methodist CY 1993 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2149GC | Houston Methodist CY 1994 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2150GC | Houston Methodist CY 1995 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2152GC | Houston Methodist CY 1996 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2153GC | Houston Methodist CY 1997 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2155GC | Houston Methodist CY 1998 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |

QRS Medicare Fraction (SSI) – Statutory & Systemic Errors – CIRP Groups
Case No. 25-2177GC *et al.*
Page 11

| | |
|---|---|
| 25-2156GC | Houston Methodist CY 1999 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2157GC | Houston Methodist CY 2000 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2158GC | Houston Methodist CY 2001 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2161GC | Houston Methodist CY 2002 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2162GC | Houston Methodist CY 2003 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2163GC | Houston Methodist CY 2004 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2164GC | Houston Methodist CY 2005 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2165GC | Houston Methodist CY 2006 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2167GC | Houston Methodist CY 2007 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2173GC | Houston Methodist CY 2010 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2174GC | Houston Methodist CY 2011 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2175GC | Houston Methodist CY 2012 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2176GC | Houston Methodist CY 2013 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |
| 25-2177GC | Houston Methodist CY 2014 Medicare Fraction (SSI) - Statutory & Systemic Errors CIRP Group |